Good morning, your honors. Good morning. David Aronoff of Lathrop and Gage for Appellant Echo Bridge Entertainment. This case involves the Motion Picture Torture Room. Echo Bridge is appealing from the trial court's judgment awarding actual damages of $350,000 to Plaintiff Randall Films after bench trial. And Echo Bridge also appeals from the trial court's award of attorney's fees of over $215,000 to Plaintiff. The issues raised by this appeal are three. First, the judgment awarding actual damages in the amount of $350,000 to Plaintiff was erroneous as a matter of law and should be reversed, asked to Echo Bridge, because it wasn't supported by any evidence whatsoever of the diminished market value of the film. Second, Plaintiff's damages were improperly calculated on a worldwide basis, although as this court is aware, the Copyright Act is not a law that can be applied extraterritorially. Third, the award of attorney's fees has to be reversed under Section 412 of the Copyright Act, which specifies that attorney's fees can only be awarded in cases where the prevailing plaintiff's copyright was registered before the acts of infringement. In this case, plaintiff's copyright in the film Torture Room wasn't registered until April 2010, several months after Echo Bridge's infringing conduct commenced in January 2010. As to the first issue of market value, this court has repeatedly held that actual damages in a copyright infringement case must be determined by the extent to which the market value of a copyrighted work has been injured or destroyed based on what a willing buyer would have been reasonably required to pay to a willing seller for the work. Well, let me ask a question. My understanding is the extraterritorial limitation only applies when the act of copyright infringement takes place outside of the United States. Is that correct? Well, this court has held in Suba Films and Reuters 1 and then Reuters 2 that there's a broad rule that the act does not apply extraterritorially. That's Suba Films. In Reuters 1, the court crafted an exception. It said where there's a completed act of infringement in the United States resulting in extraterritorial infringements, then based on that completed act of infringement in the United States, there can be an exception to the rule of no extraterritoriality. But then in Reuters 2, this court held that under the circumstances of Reuters 1, the plaintiff can only recover the defendant's profits and can't recover actual damages. In this case, there was an actual damages award of $350,000 that included harm occurring extraterritorially. And so the judgment's improper as a matter of law. What is your case that says that damages cannot be awarded where the acts take place in the United States? If the acts all take place in the United States, then damages can be awarded. Absolutely. And I apologize for, but the other aspect of the Suba Films, Reuters 1, Reuters 2 line of cases is that there has to be shown to be a causal nexus between the act in the United States and harm occurring overseas. And here there's no proof at all that our client, Echo Bridge, had any effect on overseas market. Echo Bridge's infringed conduct solely consisted of distributing DVDs of Torture Room within the United States. There was no evidence whatsoever that this had an effect on foreign markets in France, Germany, Japan, or elsewhere overseas. Did, in fact, Judge Otero award extraterritorial damages? And it seems to me that he awarded damages only for harm in the United States. No, Your Honor, that's not what the record shows. The sole theory of liability, and I'd like to get back to this point. In fact, if I can reserve a couple minutes for rebuttal, I should have mentioned that at the beginning. But the sole theory of damages on which the $350,000 was awarded was based on evidence that the production There is no evidence of any other kind leading to that quantum of damages, $350,000. When plaintiff's witness, Donald Randles, was examined about that $350,000 damages, he expressly testified that figure was based on the worldwide rights for the film. In the excerpts of record at page 714, that's volume 4 of the excerpts, at line 4, the question was posed to Mr. Randles by trial counsel, and now you're testifying that the $350,000 figure is for worldwide all rights in perpetuity. Question? Answer? Yes. So what the testimony at trial, the evidence at trial, was that damages, actual damages theory that was being presented by plaintiff was that this $350,000 was premised on worldwide rights to the film. Well, you can't get that under Suba Films, Reuters 1, and Reuters 2, because A, you'd have to show that Echo Bridge had a conduct causing a damages effect overseas, but also under Reuters 2, you can't get actual damages of any kind. But didn't Judge Otero state that the testimony regarding foreign sales was not very accurate, and that he would probably discount that testimony in determining a damages award? Well, that went to a different issue. There was a codependent in the case, Quantum Releasing, that acquired the foreign rights to the film. It was Quantum Releasing that tried to distribute the film in territories like Germany, Italy, France, the United Kingdom. But they had a license to do that, right? Under license. Quantum was unable to complete a single sale overseas. Not a single sale. What Quantum then did, however, was it distribution. Accepted the sublicense. Did you have a defense of innocent infringement? And Judge Otero agreed that Echo Bridge was an innocent infringer, and that's why. There's no punitives? No. Well, there are no punitives under the Copyright Act, but in the findings of fact, Judge Otero ruled that if he was to award statutory damages, the statutory damages would have been the sum of $25,000 against Echo Bridge for innocent infringement. Let me ask you a question. Are Quantum Leasing and Echo Bridge jointly and severally liable for this damage award? That's what the trial court held, but that can't stand as to Echo Bridge for at least two reasons. Number one being that part of the sum is for overseas conduct, and there's no evidence of any kind that Echo Bridge engaged in any conduct having an overseas effect. And under Reuters, too, you can't get actual damages for overseas conduct. Okay, so let's talk about the $350,000. You argue that it's speculative. Did you put in any evidence to rebut the $350,000 figure? I wasn't trial counsel, but there's ample evidence. But did your client? Yeah. There's ample evidence that the $350,000 figure was inappropriate. The film was essentially worthless. But you point anywhere in the record to that evidence because I had the same question. It appeared there was no rebuttal evidence that the district found that Mr. Randall's testimony was credible. Especially, I looked at it now, I didn't find that Echo Bridge offered any rebuttal evidence. Well, there are two points. A, there was ample rebuttal evidence that the film was essentially worthless. But we're not here to weigh the evidence. So that's not the focus of the brief. But just for the court's information, the fact that the film had been distributed for around two years by Quantum overseas without making a single sale, the fact that the film had been available for U.S. distribution for about two years without anybody acquiring the rights, Fox, which had distributed previous films by this production company, turned it down, shows that the film was essentially worthless. They couldn't find a distributor. But that was his point. His point was the fact that it had been rendered worthless by the infringement. The infringement didn't take place until almost two years later. The film was available for distribution as of March 2008. The conduct complained of by Echo Bridge didn't begin until January 2010. But his point was that because it wasn't properly marketed and staged, it was rendered useless. And that was the argument. But there was a gap of almost two years during which this film didn't earn a penny. Well, maybe he was waiting for the right time for the audience to be ready for the film. Well, this Court has held in a string of cases, Mackey v. Reiser, Javis v. K2, Frank Music v. MGM, that the market value has to be based on what a willing buyer would have reasonably been required to pay to a willing seller for plaintiff's work. And plaintiff didn't introduce any evidence of that. The damage is theory was essentially restitutionary. The damage is theory was we get our cost of production, $300,000, plus a not unreasonable profit of $50,000. But that's not the standard for damages in this circuit. And in Mackey v. Reiser, Javis v. K2, and Frank Music, where the plaintiff doesn't put in evidence of market value, the award of damages is improper. And that's vividly illustrated by the Gaylord case, which is cited in our reply brief, which is a Federal Circuit case. But it applies the same lot as here in the Ninth Circuit, holding that where damages quantum is reached without looking at market value based on what a willing buyer would have been reasonably required to pay to a, would have received from a willing seller, the actual damages is improper. Is that the only measure of damages available in your view? Actual damages, yes. Correct, Your Honor. If you don't mind, I'd like to move on to the issue of attorney's fees. You have just a little over two minutes. Use it as you wish. Okay. Well, I'll do it very quickly. It's clear here that the judgment entered by the trial court only allowed actual damages in the amount of $350,000. That's the only remedy awarded in the judgment. The only theory on which that remedy was based was on the claim that the film had cost $300,000 to produce and that not unreasonable profits on it would have been $50,000. The copyright in the film was not registered until after the acts of infringement. Right, but the screenplays were registered at the time of the acts of infringement. But the judgment doesn't award any remedies for infringement of the screenplays. Well, obviously the film is a derivative work of this originally copyrighted work, the screenplay. That's 100 percent correct. However, there was an alternative theory of relief for infringement of the screenplays, and that was statutory damages. And in the findings of fact, the trial court did say the plaintiff could have gotten statutory damages of $25,000 against Echo Bridge. But under Section 412 of the Copyright Act, when it's one work at issue, and that includes one work including all derivative or some components of that work, the plaintiff has to elect between statutory and actual damages. And plaintiff elected actual damages of $350,000. So the judgment includes no award to plaintiff based on infringement of the screenplays. The Supreme Court has held that in determining the prevailing party, you have to look at the judgment. Nothing else. Here the judgment entered by the court only awarded $350,000 for infringement of the film, not the screenplays. And as a result of that, the award of attorney's fees was entirely improper. All right, thank you, counsel. Thank you. We have a few seconds left. Good morning, Your Honors. May it please the Court, Orrin Baton appearing for Plaintiff and Appelee, Randalls Films, LLC. Your Honors, this was not a closed case. Liability was established at summary judgment where the court found, number one, Randalls was the owner of three valid copyrights. Two protected the screenplay. One protected the motion picture. It found that Echo Bridge and Quantum Releasing acted in concert to infringe all three copyrights. It found that all three are joint and severally liable for that infringement. That order and those findings are not on appeal. The trial only consisted of a damages determination. And as the court has noted, there was substantial evidence regarding the damages that Randalls suffered. Mr. Randalls, an executive with 30 years of experience in the film business, testified as to the cost of production to the film, which is a valid element of actual damages. He also testified as to the previous financial success of two comparable films. Another sufficient prong to prove actual damages. But what does that have to do with the success of this film, the likely success of this film, in view of opposing counsel's observation that this film had lain fallow for two years or more? Those films, all three films, were produced with the same business model. Mr. Randalls was the owner of the Lacey Street Studios, where he had access to sets, locations, access to crews. The very popular horror film, Saw, was produced there. So his method of production was to produce these films exclusively in his studio. Mr. Randalls garnered marketing and financial success from the distribution of Dark Wolf and Who Made the Potato Salad? These are the two comparable films. The reason why they're relevant is because the same method of production was utilized, and the efficiencies in that production were also utilized. Dark Wolf was also the same genre as Torture Room. Were those films distributed substantially after their completion? There was a lag time, yeah. Two years? I don't know that it was two years. It wasn't two years in this case. What was the lag time in this case? The time frame was very short, actually. Quantum Releasing returned from the Cannes Film Festival in May of 2009. In November of that year, it issued projections to Randalls that it would garner somewhere between $219,000 and, I believe, $427,000 in foreign sales. That's November 2009. January 2010, three months later, Echo Bridge and Quantum infringe the copyrights by distributing the film. And there was testimony in the record. There is no rush to release films. Timing is very important. The method of releasing a film is very important. The marketing is important. Echo Bridge botched this release and rendered it valueless. It didn't produce a trailer. It didn't have the film rated, which is a requirement for Walmart, one of the largest retailers in the country. It didn't contact the director. It didn't market the director, even though he had prior success in a film called Mega Piranha. Your clients, to go back to Judge Rawlinson's line of questioning, the first two films made a profit, but then two more recent films didn't make any profit at all. What is the evidence that supports the $50,000 in profits? Those two other films were never released because Mr. Randalls was waiting for the right opportunity. It's not that they didn't make a profit. It's that they hadn't yet been released. The $50,000— It doesn't make a profit. That's correct. That's correct. At the time of trial, there was no profit derived from those films. The reason being, they weren't released yet. The other market evidence in the record, notably, was from Netflix, which only represents 1% to 2% of the market at that time. At trial, there was evidence that over 9,000 people expressed interest in viewing the film. Over 6,000 actually viewed it. Another 3,000 or so put it in their queue. The point being, there was a market for the film. The district court noted that the $50,000 expected profit was a very conservative estimate. Mr. Randalls was not overreaching here. Like some of the cases cited by Echo Bridge on Davis, for example, where the plaintiff was seeking $2.5 million, and the court found it's probably closer to $50. This is not that case. Counsel, may I ask you what case most strongly supports your view that the cost of production plus the anticipated profits is a permissible way to gauge damages in a copyright infringement case? We had a lengthy discussion in our brief regarding Universal Pictures v. Harold Lloyd. Similar in that the owner of the copyright testified, the court relied upon the cost of production in evaluating actual damages. That's not the only case. Polar Bear, another case cited by Echo Bridge, also took into account the cost of production when calculating the lost license fee. The principal witness in that case testified and relied upon the cost of production in determining the amount of that lost license fee. Moreover, Echo Bridge, and I think it's important to address, the standard of review here is clear error. The district court utilized the proper standard. Let me ask you, your opposing counsel makes an argument that the $350,000 amount included worldwide extraterritorial damages. If it did, was that error under Reuters 2? Assuming it did, I don't think Reuters 2 applies here because that only deals with profits. Well, right, but you were awarded actual damages. So under Reuters 2, you could only recover profits. The difference here, though, is all of the infringement took place in the United States and all of the damage, the evidence points to damage occurring in the United States. And I would just point the court's attention to Finding of Fact, Numbers 8 and 9, excerpt of Record 19. The court finds, number one, there was a market for the film in the United States, and number two, the infringement of the copyrights caused Randalls to lose $350,000. That necessarily means it was only derived from the United States. Echo Bridge, all of its actions were taken in the United States. It did export some DVDs to Canada and import them, but that's not, it was United States distribution. That's all that was at issue. And I think it's worth noting the term worldwide was placed in Mr. Randalls' mouth in a leading question by Echo Bridge's trial counsel. On excerpt of Record 714, the immediate question that follows, the question of whether it includes worldwide rights, asks whether, shouldn't that $350,000 be allocated somehow between domestic and foreign distribution? And Mr. Randalls answered, you're forgetting that on our other film, Who Made the Potato Salad, that was only a domestic release where we garnered $650,000 up front with a $50,000 profit. He invested $600,000 there. He immediately derived $650,000 in profits. So I think it's clear from the record, worldwide was not awarded to Randalls here. Well, did the damages include the marketing in Canada? No. What's the evidence that it didn't? Well, it's a good question. Randalls at trial actually tried to show evidence of importation after registration of the motion picture copyright. The court was not persuaded by that evidence. Similarly, when Randalls proffered evidence regarding these foreign sales projections in November 2009, the district court was not persuaded by that evidence either. The evidence was presented there, but that is not what the district court relied upon when issuing its judgment. And I think it's important to recognize Randalls here is the damaged party. He needs to recover. Echo Bridge cannot fail to produce any evidence at trial, fail to provide any rebuttal evidence, which it did not, consistently maintain unreasonable legal positions that somehow Randalls ratified its conduct, failed to mitigate its damages. It consistently maintained a zero damage theory throughout this entire matter. It cannot now point to any alleged uncertainty in the damages. It's the infringer. It bears the risk of any uncertainty in the damages. With respect to the attorney's fees, I think it's a pretty simple analysis that was disposed of at summary judgment. The court found three valid copyrights, infringement of three valid copyrights.  The analysis between actual damages and eligibility for attorney's fees are two separate sets of analysis. The second certain case in On Davis clarified that. When it analyzed, you don't need any damages, actually, to be a successful litigant in a copyright infringement claim where it analyzed a declaratory relief claim for relief. So it doesn't matter how the actual damages were derived. The point is Randalls was eligible for attorney's fees. And there are cases in which parties, of course, have been awarded actual damages and have also been awarded attorney's fees. Echo Bridge seems to argue that Randalls must have elected statutory damages in order to receive attorney's fees. It's not the case. The Abe's House case and also the Frank Musick case are instances in which courts have awarded actual damages and attorney's fees. So I think it is important, going back to damages, that the court recognize the lenses that should be used in evaluating the well-reasoned decision of the district court. The phrase that Echo Bridge argues should be used, the market value evidence, is only one method of calculating actual damages. There are many other methods, as we've seen with cost of production, reasonable royalties. It's not as rigid as Echo Bridge would have this court think. To the contrary, actual damages are to be broadly construed to favor the victim of infringement. And, of course, the district court's determination of Randalls' credibility should not be overturned by this court. So this is totally off the record, and it's just curiosity, and it's not going to affect my judgment on how I will in this case at all. But is quantum leasing judgment-proof? Yes. All right. And, again, it's important to note that the finding of joint and several liability is not on appeal. So the judgment entered is equally shared between Echo Bridge and quantum. And I will also want to point out, the district court did not find Echo Bridge was an innocent infringer. It found half of that equation. It found it did not know it was infringing when it released the film. But it did not find it had no reason to know. And both findings are required. What it did find is that Echo Bridge is a non-wilful infringer. There's a difference. It also gave Echo Bridge a $25,000 statutory award, which is near the ceiling for non-wilful infringers. $30,000 is the maximum that can be awarded to a non-wilful infringer. And that was based on its culpability. Echo Bridge continued to sell the film even after the trial started, continued to solicit sales for the film, refused and failed to withdraw copies of the infringing work from the market. So, in essence, it botched the initial film release. It then let it wither and die out in the marketplace. And now it argues Randall should be entitled to zero damages. That doesn't work. And that's not what the district court found. Even if Echo Bridge was found to be an innocent infringer, it would have no bearing on the district court's determination of actual damages. It only applies to statutory damages. And it only permits the district court to lower the floor for statutory damages, down to $200 from $750. Clearly, the district court didn't go that way. It went towards the ceiling. And Echo Bridge was on notice before it released the film that there would be an issue. This was the first deal it did with Quantum Releasing. And two other films were pulled from this package, Burning Mussolini and Risen, because Quantum didn't have the rights to distribute the film. So, at that point, Echo Bridge was on fair notice that Quantum Releasing is not a party to be trusted. Echo Bridge also failed to secure a chain of title for the film before it released it, failed to secure errors and omissions insurance. So it is not an innocent party here. And it should be required to pay the judgment entered by the district court. All right. Thank you, Counsel. Thank you, Your Honor. Your Honors, I know I just have a few seconds. So just very quickly, Counsel presumes that his client prevailed on the claim for statutory damages, but as a matter of law, it didn't. Under the Buchanan case, to determine whether a party prevailed on a claim, you have to look at the judgment. There's nothing in the judgment about statutory damages. Hence, there was no award for infringement of the screenplays, which means that the award of attorney's fees was entirely improper. I commend to the court the Gaylord v. U.S. case that's cited in our reply brief, as well, of course, as the Mackey v. Reiser, the Jarvis v. K2 case, the Frank Music case. All of these cases say that what a seller would have demanded for the product, which is the award of damages here, as a matter of law, cannot be the damages under the Copyright Act. What you would have demanded to sell your product, the $300,000 plus the $50,000, does not equate to the market value of the work. And this court has repeatedly held that market value is the measure of actual damages. There's not a single case that allows a restitutionary damage in copyright, that the plaintiff in a copyright infringement case can get the cost of the creation of the work. In the Ahn-Davis case, for example, as counsel points out, the plaintiff said that he wanted to collect, I think it was $2 million or $2.5 million for a license for the use of sunglasses in a commercial, and the court found that the market value of the use was $50. The plaintiff in that case couldn't have said, well, it took me $2 million to develop these sunglasses, so I get a restitutionary remedy. There is no restitutionary remedy under copyright. The court erred as a matter of law by applying that measure of damages without looking to market value. Thank you, Your Honor. All right, thank you, counsel. Randall Spilms v. Echo Bridge Entertainment is submitted.
judges: Nelson, Wardlaw, Rawlinson